UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| (I')SLA BALLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:11 CV 1553 RWS |
| | ) |
| CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

In a 17 count complaint, Plaintiff (I')sla Ballard has sued Defendants for violations of his constitutional rights and state law. All claims arise out of Ballard's arrest on June 12, 2009, and his subsequent prosecution. Defendants move for summary judgment on all claims. Ballard, who is proceeding pro se, opposes summary judgment.

## Factual Background

At approximately 11:20 a.m. on June 12, 2009, the St. Louis police dispatch received an emergency call from Sheila Woods. [Doc. #74-1]. Woods claimed that she saw an African-American male wearing a blue jump suit in the rear of her residence at 2003 E. Fair Avenue. Id. Woods believed the man might have entered the basement of the residence. Id. Woods requested police assistance. Id.

Officers Vaughan, Lovadina, Lovelady-Armstrong, and Ogilive responded to the call. [Doc. #74-3]. Woods greeted the officers outside when they arrived at 2003 E. Fair Avenue. Id. Woods informed the officers that her mother lived in the upstairs portion of the two-family residence. Id. She further informed the officers that she saw someone carrying her mother's

television in the rear of the residence and that she believed the residence was being burglarized. Id. Woods possessed a key and the key code to the residence. Wood used the key and key code to grant Officers Vaughn and Lovadina entrance in order to make sure it was safe for her to enter the residence. Id.

At this point, the parties' accounts of the events are in conflict.[1] According to Ballard, he rented a basement apartment in residence. [Doc. #79, p. 2]. Ballard alleges that the officers "kicked-in" four locked doors, including a "back kitchen-door," to enter his private basement apartment without warning or warrant. Id. The officers discovered Ballard asleep in his bed and, without provocation, began beating him. Id. at 3. The officers dragged Ballard out of the apartment while continuing to kick and punch him, despite his pleas that he was not resisting arrest. [#1, p. 4]. The officers also directed racial slurs at Ballard. Id. After the officers placed Ballard in handcuffs, Officer Vaughn applied his Taser on the back of Ballard's left leg. Id. Officer Henderson then applied his Taser on the back of back of Ballard's left shoulder, causing him to temporarily lose consciousness. Id.

The Officers Vaughn and Lovadina claim that when they entered the basement, they discovered Ballard in bed "acting as if he were asleep." [Doc. #74-3, p.2]. As the officers attempted to handcuff Ballard, he struck Officer Lovadina in the shoulder. Id. The officers then subdued Ballard "after a physical altercation." Id.

---

[1] Ballard did not file a Statement of Uncontroverted Material Facts in contravention of Local Rule 4.01(E). Defendants argue in their Reply in Support of their Motion for Summary Judgment [Doc. #70] that Ballard's failure to comply with Local Rule 4.01(E) should result in admission of all their uncontroverted facts. However, pro se pleadings are held to a less stringent standard than those pleadings filed by counsel. See Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). The Court broadly construes and affords a liberal construction to pro se pleadings. Johnson v. Arden, 614 F.3d 785, 798 (8th Cir. 2010). In his "Affidavit For Objection To Summary Judgment" [Doc. #79], Ballard disputes Defendants' account of the events. I will consider Ballard's affidavit when determining whether Defendants are entitled to summary judgment.

As a result of the incident, Ballard was charged with assault of a law enforcement officer, resisting arrest, and violating his probation. Id. On November 30, 2009, Ballard pled guilty to assault of a law enforcement officer and resisting arrest. [Doc. #74-7].

**Procedural Background**

On September 7, 2011, Ballard filed this action against the City of St. Louis, Chief of Police Daniel Isom, and police officers Robert E. Oglivie, Ronald E. Vaughan, Isabella Lovadina, Chris N. Lovelady-Armstrong, and Jarrod L. Henderson in their official and individual capacity. On September 22, 2011, Judge Carol Jackson conducted a frivolity review pursuant to 28 U.S.C. § 1915(e) and dismissed Ballard's claims against the City of St. Louis and Chief of Police Daniel Isom for failure to state a claim. Judge Jackson also dismissed Ballard's § 1983 claims of verbal harassment, property damage, and malicious prosecution for failure to state a claim.

I now construe Ballard's remaining self-styled and duplicative claims to state three federal causes of action. Ballard seeks relief under § 1983 for unlawful entry, excessive force, and the filing of a false police report. Ballard also brings claims arising from Missouri law for unconstitutional search and seizure, negligence, assault and battery, negligent and intentional infliction of emotional distress, and property damage. On June 6, 2013, Defendants filed a motion for summary judgment on all claims. Ballard opposes summary judgment.

On August 19, 2013, I issued a Memorandum and Order informing parties that I was considering granting Defendants summary judgment on Ballard's claim of excessive force on the grounds of qualified immunity, a ground which Defendants did not raise in their initial motion for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(f)(2), I granted parties

the opportunity to file supplemental briefing on the issue of qualified immunity no later than September 27, 2013. Defendants submitted a supplemental brief on September 26, 2013. On September 20, 2013, Ballard filed what I construed as a motion for extension of time, and I granted this motion, allowing Ballard until October 18, 2013, to file any supplemental briefing. As of today's date, Ballard has not filed any supplemental briefing.

## **Legal Standard**

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Fed.R.Civ.P. 56(c)(2)). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Id. (internal quotation marks and citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec.

4

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted).

## Discussion

### A. Unlawful Entry

Ballard alleges that Defendants entered his home in violation of the Fourth Amendment. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As explained by the Supreme Court, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980). Here, there is no dispute that officers entered Ballard's residence and arrested him without a warrant. The issue is whether probable cause and exigent circumstances justified the officers' warrantless entry.[2]

There is no exhaustive list of exigent circumstances. Exigent circumstances are "typically limited to situations where a life is threatened, a suspect's escape is imminent, or evidence is about to be destroyed...." Radloff v. City of Oelwein, 380 F.3d 344, 348 (8th Cir. 2004). Additionally, "[a] legitimate concern for officer safety or the safety of others may constitute an exigent circumstance, and a warrantless entry into a residence may be justified if an officer has a reasonable fear of harm." United States v. Poe, 462 F.3d 997, 999 (8th Cir. 2006).

---

[2] Defendants argue that they did not require probable cause or a warrant to conduct a constitutional search because Woods gave the officers consent to enter the residence. See U.S. v. Jenkins, 92 F.3d 430, 436 (1996) ("When one person consents to a search of property owned by another, the consent is valid if 'the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.') (quoting Illinois v. Rodriguez, 497 U.S. 177, 188 (1990). Defendants maintain that Woods unlocked the door to the residence and allowed them to enter. However, Ballard alleges that the officers kicked in the door to his basement apartment. Because these material facts are in dispute, Defendants are not entitled to summary judgment basis on their consent argument.

5

When considering the presence of exigent circumstances, courts asks whether the officer "could have 'reasonably but mistakenly' concluded that exigent circumstances were present based upon the information [the officer] possessed at the time." Rogers v. Carter, 133 F.3d 1114, 1119 (8th Cir. 1998) (alteration added). "[T]he burden is on the state to show the entry is within the exception, and an objective standard is used to evaluate the reasonableness of the officer's belief that exigent circumstances existed." United States v. Selberg, 630 F.2d 1292, 1295 (8th Cir. 1980).

I find that the officers had probable cause to believe that a burglary was in progress at 2003 E. Fair Avenue. Defendants point to several specific and articulable facts which support this finding. The officers were responding to a 911 call about a burglary in progress. When the officers arrived at the scene, Woods informed them that she saw a man in the rear of the residence carrying a TV that she believed to be her mother's. Woods believed a burglary was in progress and that the intruder was in the residence. An ongoing burglary can provide exigent circumstances for the police to search a home in order to stop the crime during its commission and to protect the occupants of the house and their property. See, e.g., United States v. Singer, 687 F.2d 1135, 144 (8th Cir. 1981) (upholding warrantless entry where officer responded to find strangers with a pickup truck backed up to the house); United States v. Brown, 449 F.3d 741, 748 (6th Cir. 2006) (finding exigent circumstances existed an officer responded to an alarm and a neighbor directed the officer to an ajar basement door); Reardon v. Wroan, 811 F.2d 1025, 1030 (7th Cir.1987) (finding exigent circumstances where police received call reporting burglary at a fraternity house when students were typically away, and found a single car in the driveway and the door unlocked).

In hindsight it appears that the officers may have acted upon incorrect information; Ballard alleges that he resided in a private apartment in the basement of 2003 E. Fair Avenue. Nonetheless, a determination of whether a legal warrantless entry occurred focuses on whether a law enforcement officer acted with an objectively reasonable belief that exigent circumstances existed, not on whether they actually existed. See Anderson v. Creighton, 483 U.S. 635, 641 (1987). At the time the officers entered Ballard's basement apartment, an objectively reasonable officer could have believed that exigent circumstances justified the warrantless entry. When the officers responded to a 911 call about a burglary, Woods informed them that she believed a burglary was in progress and that the intruder was in the residence. The officers were not aware that the residence contained a separate basement apartment occupied by Ballard. Acting upon the information available to them, the officers immediately entered the residence to ensure the safety of the occupants and thwart an ongoing crime. It would have been unreasonable had the officers not done so, as it "would defy reason to suppose that [the officers] had to leave the area and secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested." Singer, 687 at 144. Even accepting Ballard's account of the facts as true—that the officers kicked in the "back kitchen-door" door to gain entry to his apartment—I find that, as a matter of law, exigent circumstances justified the officers' entry. Defendants are entitled summary judgment on the warrantless entry claim.

**B.     Excessive Force**

Ballard alleges that Defendants used excessive force during his arrest. Defendants maintain that they are entitled to qualified immunity. In § 1983 actions, qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known."

7

Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct.  Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, Pearson v. Callahan, 555 U.S. 223, 235–36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes."  McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012).

At the time of Ballard's arrest on June 12, 2009, it was clearly established that an arrestee enjoyed the right to be free from excessive force during an arrest.  Henderson, 439 F.3d at 503.  In 2011, the Eight Circuit made it clear that an excessive force inquiry must focus on the force applied rather than the resulting injury.  Chambers v. Pennycook, 641 F.3d 931, 936 (8th Cir. 2005).  However, at the time of Ballard's arrest, it was unclear whether an officer violated the rights of an arrestee by applying force that caused only *de minimis* injury.  Id. at 908.  Thus, a reasonable officer could have believed that as long as he did not cause Ballard more than *de minimis* injury, his actions would not run afoul of the Fourth Amendment.  See Id.; see also McClennon v. Kipke, 821 F. Supp. 2d 1101 (D. Minn. 2011).

Ballard claims that the officers beat and shocked him twice with a Taser during his arrest. However, the record is devoid of evidence showing that Ballard suffered any serious or residual physical injury.[3] While a Taser delivers a "painful and frightening blow" that can render "even the most pain tolerant individuals utterly limp," McKenney v. Harrison, 635 F.3d 354, 362 (8th Cir. 2011), the Eighth Circuit has held that in the absence of evidence of long-term effects, the use of a Taser does "not inflict any serious injury." Cook v. City of Bella Villa, 582 F.3d 840, 851 (8th Cir. 2009); LaCross v. City of Duluth, 713 F.3d 1155, 1158 (8th Cir. 2013) (application of the Taser did not cause more than *de minimis* injury to the arrestee); McClennon, 821 F. Supp. 2d at 1107 (absent any evidence of long-term effects, the use of a Taser does not inflict any serious injury).

On August 19, 2013, I issued a Memorandum and Order informing parties that I was considering granting Defendants summary judgment on Ballard's claim of excessive force on the grounds of qualified immunity. I granted parties the opportunity to file supplemental briefing on this issue. Ballard has not filed any supplemental briefing or submitted any evidence of his alleged injuries. Because Ballard has not shown he suffered more than *de minimis* injury, he cannot show that Defendants violated any clearly established law. Defendants are therefore entitled to qualified immunity with regard to Ballard's excessive force claim.

---

[3] Ballard's complaint alleges that he suffered "serious and painful injuries to the back, wrists, shoulders and painful headaches, emotional stress and nightmares." However, Ballard has submitted no evidence, such as medical records or even testimony of a medical diagnosis, to support his allegations. Ballard's bare assertions, without evidence to support them, are insufficient to constitute something more than *de minimus* injuries. See, e.g., Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir.1990) (concluding that a claim of nerve damage was not tantamount to excessive force in the absence of "medical records indicating ... any long-term injury as a result of the handcuffs.").

## C. Falsified Police Report

Ballard alleges that Defendant Vaughan falsified the police report in violation of 42 U.S.C. § 1983. However, there is no constitutional right to an accurate police report. Harmon v. St. Louis County, No. 4:08CV226SNLJ, 2009 WL 880024, at *3 (citing Shock v. Tester, 405 F.2d 852, 855 (8th Cir. 1969)). Falsifying a police report constitutes a due process violation only when the allegedly falsified report leads to an unconstitutional deprivation of life, liberty, or property. Id. at *3 (citing Landigran v. Warwick, 628 F.2d 736,744 (1st Cir. 1980)). In Harmon, the Court construed plaintiff's pleadings as an inartfully drafted claim of denial of access to the courts and dismissed the claim for failing to allege that the defendants' actions denied him "meaningful access" to the courts. Id.

Here, Ballard has not alleged that, as a consequence of the allegedly false police report, he was deprived of a constitutionally protected interest. The police report did not cause Ballard's arrest. Ballard later pleaded guilty to resisting arrest and assaulting law enforcement officers as a result of the events of June 12, 2009. Thus, given that Ballard elected not to contest the only charges against him, I cannot see how the alleged inaccuracies in the police report deprived him of any constitutional rights.[4] Because Ballard has not alleged a constitutional injury arising out of the allegedly falsified police report, I will grant Defendants summary judgment on this claim

## D. State Law Claims

The final issue to be resolved is whether I should retain jurisdiction over Ballard's pendent state law claims. Because the claims over which this Court had original jurisdiction have now been dismissed, it is within my discretion to dismiss Ballard's state law claims for lack

---

[4] To the extent that Ballard is alleging that the false police report coerced him to plead guilty, this claim would be barred the Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477 (1994) (A § 1983 plaintiff may not recover damages where the judgment would necessarily imply the invalidity of his conviction).

of subject matter jurisdiction. See Carnegie–Mellon University v. CoHill, 484 U.S. 343, 352–353 (1988) (holding that federal courts have wide discretion in determining whether to dismiss or remand pendent state law claims when the exercise of pendent jurisdiction is inappropriate). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. Because Defendants are entitled to summary judgment on Ballard's § 1983 claims—the basis for the Court's exercise of federal jurisdiction—I decline to exercise supplemental jurisdiction over the state law claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [#73] is **GRANTED** as to Plaintiff's 42 U.S.C. § 1983 claims.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this matter and this case is hereby **DISMISSED** without prejudice.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2014.